# 14-2240-cv

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

---

**ISAAC ALTMAN, for himself and all others similarly situated,**

*Plaintiff/Appellant,*

**- against -**

**J.C. CHRISTENSEN & ASSOCIATES, INC.,**

*Defendant/Appellee.*

---

*On Appeal from the United States District Court*
*for the Eastern District of New York*

## APPELLANT'S BRIEF

MICHAEL KORSINSKY
JOSEPH P. GARLAND
**KORSINSKY & KLEIN, LLP**
**2926 Avenue L**
**Brooklyn, New York  11210**
**212-495-8133**
*Attorneys for Appellant*

# **Table of Contents**

Table of Contents ..................................................................................... i

Table of Authorities ............................................................................... iii

Jurisdictional Statement ........................................................................... 1

Question Presented.................................................................................... 2

Statement of the Case................................................................................ 2

    I. Preliminary Statement ..................................................................... 3

        1.  The Fair Debt Collection Practices Act.................................... 3

    II. Facts ............................................................................................... 5

    III. Section 1692e of the FDCPA ........................................................ 8

    IV. The Decision Below ...................................................................... 8

Summary of Argument ............................................................................ 10

Standard of Review.................................................................................. 10

Argument.................................................................................................. 11

    I. The Test Applied to Whether a Defendant Is Entitled to
        Judgment on the Pleadings ......................................................... 11

    II. Should He Prove His Claims, Plaintiff Will Be Entitled to
        Relief Under the FDCPA............................................................ 11

        1.  The Letter Violated the FDCPA............................................ 12

        2.  Mr. Altman is Not Claiming that J.C. Christensen had to
           Advise of "Potential Tax Implications" ................................ 13

Conclusion ............................................................................................... 18

Statutory Addendum: 15 U.S.C. § 1692e ........................................... SA1

# Table of Authorities

## Statutes and Rules

Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ............... 5, 11, 12, 19

Fair Debt Collection Practices Act, 15 U.S.C. § 1692e .................................. passim

Internal Revenue Code, 26 U.S.C. § 61(a)(12) ......................................................... 6

Rule 12(c), Federal Rules of Civil Procedure ................................................. 1, 2, 11

Securities Act of 1933, 15 U.S.C. § 77k(a) ............................................................... 8

## Cases

Ad-Hoc Comm. of Baruch Black and Hispanic Alumni Ass'n v. Bernard M. Baruch College, 835 F.2d 980 (2d Cir. 1987) .................................. 11

Clomon v. Jackson, 988 F.2d 1314 (2d Cir. 1993) .................................................. 12

DeSantis v. Computer Credit, Inc., 269 F.3d 159 (2d Cir. 2001) ........................... 11

Easterling v. Collecto, Inc., 692 F.3d 229 (2d Cir. 2012) ............................... 11, 12

Ellis v. Cohen & Slamowitz LLP, 701 F. Supp. 2d 215 (N.D.N.Y. 2010) ....................................................................................................... 10, 15

Greco v. Trauner, Cohen & Thomas, L.L.P., 412 F.3d 360 (2d Cir. 2005) .................................................................................................... 4, 10, 11

Hooks v. Forman, Hold, Eliades & Ravin, 717 F.3d 282 (2d Cir. 2013) ................................................................................................................. 4

Jacobson v. Healthcare Fin. Servs., Inc., 516 F.3d 85 (2d Cir. 2008) ...................... 8

Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich, 559 U.S. 573 (2010) ............................................................................................................... 3

Kearney v. Cavalry Portfolio Servs., LLC, 2014 U.S. Dist. LEXIS 105577 (E.D.N.Y. July 31, 2014) ......................................................................... 7

Landes v. Cavalry Portfolio Services, LLC, 774 F. Supp. 2d 800 (E.D. Va. 2011) ............................................................................................ 16, 17, 18

## <u>Cases</u>

<u>Russell v. Equifax A.R.S.</u>, 74 F.3d 30 (2d Cir. 1996) ..............................................12

<u>Schaefer v. ARM Receivable Management</u>, 2011 U.S. Dist. LEXIS
    77828 (D. Mass. July 19, 2011)............................................................. 10, 13, 17

<u>Vincent v. The Money Store</u>, 736 F.3d 80 (2d Cir. 2013)........................................4

## **Jurisdictional Statement**

This Appeal is from an original proceeding filed in the United States District Court for the Eastern District of New York. That court had subject-matter jurisdiction because the single claim for relief arose under federal law, asserting that a letter sent by Defendant/Appellee to Plaintiff/Appellant violated the Fair Debt Collection Practices Act.[1]

On June 11, 2014, the District Court, (Ross, J.), granted Defendant's motion for judgment on the pleadings under rule 12(c) of the Federal Rules of Civil Procedure on the ground that Defendant's letter to Plaintiff was not misleading and thus Defendant did not violate the Act.[2] The District Court entered a final judgment in Defendant's favor on June 11, 2014.[3] Plaintiff filed his notice of appeal with the District Court on June 19, 2014,[4] making this Appeal timely.

This Appeal is from a final order or judgment that disposes of all parties' claims.

---

[1] 15 U.S.C. § 1692 et seq.

[2] Reported at 2014 U.S. Dist. LEXIS 79621 (E.D.N.Y. June 11, 2014). ECF No. 30. (A21) ECF references are to the entries in the Eastern District of New York's docket sheet, (A1-5).

[3] ECF No. 31. (A29)

[4] ECF No. 32, (A31).

## **Question Presented**

*1.* When a debt collector elects to include in its collection letter the statement that should the consumer accept a proposed settlement-offer she will enjoy specific "savings", is the letter misleading under the Fair Debt Collection Practices Act if it does not say that such "savings" might be subject to taxation so that the amount of actual savings realized would be lower than what they were represented to be? The District Court said No.

## **Statement of the Case**

Plaintiff Isaac Altman filed this Action on November 22, 2013 via a complaint that asserted a single claim-for-relief for an alleged violation of the Fair Debt Collection Practices Act (FDCPA) by Defendant J.C. Christensen & Associates, Inc.[5] The case was assigned to Judge Allyne R. Ross. J.C. Christensen answered the Complaint on March 6, 2014.[6] It then moved for judgment on the pleadings under rule 12(c) of the Federal Rules of Civil Procedure.[7] The motion was fully-briefed and submitted, and on June 11, 2014 Judge Ross granted the motion[8] and

---

[5] ECF No. 1. (A6)

[6] ECF No. 11. (A15)

[7] ECF No. 24. (A20)

[8] ECF No. 30. (A21)

judgment was entered in J.C. Christensen's favor.[9] Mr. Altman filed his notice of appeal with the District Court on June 19, 2014.[10]

Judge Ross's opinion appears at 2014 U.S. Dist. LEXIS 79621 (E.D.N.Y. June 11, 2014).[11]

## I.  Preliminary Statement

### 1.  The Fair Debt Collection Practices Act

"Congress enacted the FDCPA in 1977 to eliminate abusive debt collection practices, to ensure that debt collectors who abstain from such practices are not competitively disadvantaged, and to promote consistent state action to protect consumers."[12] It bans the making of false representations or misleading statements by debt collectors and is enforceable via administrative actions and private suits.[13]

As with other prohibitions of deceptive behavior, courts have provided guidance going forward concerning what is and what is not compliant with the Act. This Court has done so in many contexts, finding, for example, that a lawyer who had not had significant involvement with a consumer's file before sending a debt-

---

[9] ECF No. 31. (A29)

[10] ECF No. 32. (A30)

[11] The opinion was designated by Judge Ross as "not for electronic or print publication". (A21)

[12] Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich, 559 U.S. 573, 577 (2010) (Sotomayor, J.) (statutory-reference omitted).

[13] Id.

collection letter will still comply with section 1692e(3)[14] (and 1692e(10)) if she includes language in the letter to the effect that "at this time, no attorney with this firm has personally reviewed the particular circumstances of your account".[15] More recently, it held that a consumer wishing to dispute a debt need not do so in writing so that a letter saying that it must be in writing violates the Act.[16]

Here, the letter-in-question said that if Mr. Altman accepted one of the settlement offers being made he would enjoy "a savings of $2,123.85 on your out-standing account balance".[17] By saying "a savings of $2,123.85", did the letter's sender, J.C. Christensen, have to add that the "$2,123.85" (or a significant chunk of it) was not really a savings of that much because a significant portion of it could be treated as taxable income? It is a question answered by only a few district courts, including this case, and apparently by no court of appeals.

---

[14] 15 U.S.C. § 1692e(3). This is section 807(3) of the Act, but for convenience we refer to provisions of the Act by their placement in Title 15.

[15] Greco v. Trauner, Cohen & Thomas, L.L.P., 412 F.3d 360, 365 (2d Cir. 2005) (Calabresi, J.). The Court had earlier held that a lawyer must have such meaningful involvement before sending a letter without any caveat. Clomon v. Jackson, 988 F.2d 1314, 1318 (2d Cir. 1993) (Cabranes, D.J.). See also Vincent v. The Money Store, 736 F.3d 88, 97 n.6 (2d Cir. 2013) (Katzman, C.J.).

[16] Hooks v. Forman, Hold, Eliades & Ravin, 717 F.3d 282, 286 (2d Cir. 2013).

[17] Cplt., Exh. 1. (A13) As noted below, there was a second offer that referred to "a savings of 48%" that is similarly problematic.

4

## II. <u>Facts</u>

This case was brought as a class action concerning what is a form debt-collection letter sent by J.C. Christensen to Isaac Altman dated May 17, 2013 (the "Letter").[18] The Letter told Mr. Altman that he would enjoy specified "savings" if he accepted certain debt-reduction offers presented to him. It did not mention, though, that because of possible taxes the specified "savings" might not be as great as stated. Thus, the Letter was deceptive and violated the FDCPA.

The Letter is short, its defects easily described. Mr. Altman, it said, owed $6,068.13 to "Cavalry SPV I LLC", which bought the debt from the original creditor, "Bank of America/FIA Card Services N.A." After saying, "we have been authorized to negotiate GENEROUS SETTLEMENT TERMS on this account", the Letter listed three "settlement opportunities". This case concerns the first two,[19] and the effect of the (added) underscored language:

> Settle your account now for a lump-sum payment of $3,155.43. <u>That is a savings of 48% on your outstanding account balance.</u>

This, "Offer 1", reduces the debt by $2,912.70. "Offer 2" reads:

---

[18] The letter is attached as Exhibit 1 to the Complaint, ECF No. 1. (A13-14) The facts set forth are from the Complaint.

[19] The third option was paying off the amount owed in equal monthly-payments over 12 months, with no reduction. (A13)

Extend your time and settle your account in three payments of $1,314.76. <u>This is a savings of $2,123.85 on your outstanding account balance.</u>[20]

The Complaint alleges that:

under the Internal Revenue Code, any debt-amount forgiven in excess of $600 must be reported as income on one's federal tax return. The amount of debt being forgiven in the offers set out in the Letter [i.e., Offers 1 and 2] may be taxable under 26 U.S.C. § 61(a)(12), which includes in its definition of "gross income" "income from discharge of indebtedness".[21]

Thus, by accepting Offer 1, <u>the Letter said</u>, Mr. Altman would enjoy debt-reduction "savings of 48%" (which was $2,912.70).[22] Under the Internal Revenue Code, a debt-reduction of over $600 is "income" for tax purposes. Were this offer accepted, Mr. Altman would have additional income of $2,312.70 on which taxes may have to be paid. Were Mr. Altman in a 10% tax bracket, the true "savings" to him would not be 48%, as the Letter says, but 34%. The difference is material and the Letter's statement of a "savings of 48%" was false and misleading.

---

[20] Cplt., Exh. 1 (emph. added). (A13) Mr. Altman, and not the Letter, label these "Offer 1" and "Offer 2".

[21] Cplt., ¶ 14 (citing 26 U.S.C. § 61(a)(12)). (A8)

[22] Cplt., ¶ 13. (A8)

6

Similarly, accepting Offer 2 would likely end up <u>not</u> with "a savings of $2,123.85 on your outstanding account balance"; applying the foregoing hypothetical renders the actual "savings" $1,941.46.[23]

The Letter violates the Act because it says that Mr. Altman will enjoy specific "savings" should he accept a proffered offer but does not say that that specific amount might not be so large because the reduction could be taxable. To the least-sophisticated consumer, this is deceptive. If J.C. Christensen did not think the precise amount of the "savings" – e.g., "savings of 48%" or "a savings of $2,123.85" – was relevant, and thus "material" to the recipient, it didn't have to set forth these specific amounts. Having elected to do so, its Letter became deceptive.[24]

---

[23] There are exceptions to debt-reduction being included in "gross income", for example, if there is a bona fide dispute about the amount owed and the parties settle on a compromise figure. This is why J.C. Christensen should have said that there "may" be tax consequences. It is not being asked to review the consumer's particular tax situation and whether the offers made to her would, or would not, have tax consequences to her if one were accepted.

[24] This Court has not decided whether something said in a communication must be material in order to amount to a violation of section 1692e. <u>See</u> <u>Kearney v. Cavalry Portfolio Servs., LLC</u>, 2014 U.S. Dist. LEXIS 105577, at *26-27 (E.D.N.Y. July 31, 2014) (Irizarry, J.). For an omission, however, the familiar principle in the securities-law context that to be actionable an omission must render what is said misleading – such as the reference in section 11 of the Securities Act to the inappropriateness of a registration statement that "omitted to state a material fact required to be stated therein or necessary to make the statements therein not

(footnote cont'd . . .)

## III.  <u>Section 1692e of the FDCPA</u>

This Action was brought pursuant to section 1692e of the Fair Debt Collection Practices Act, which provides,

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> *          *          *
>
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.[25]

## IV.  <u>The Decision Below</u>

In granting the motion, Judge Ross began by noting that "[i]n determining whether a particular practice is 'false, deceptive, or misleading,' [under section 1692e] courts apply an objective standard based on the 'least sophisticated consumer'", which "serves the FDCPA's 'dual purpose' of protecting consumers while also 'protect[ing] debt collectors from unreasonable constructions of their communications.'"[26]

_____

(. . . footnote cont'd)

misleading", 15 U.S.C. § 77k(a) – would seem the appropriate way in which to view an FDCPA-omission.

[25] 15 U.S.C. § 1692e.

[26] 2014 U.S. Dist. LEXIS 79621, at *6-7, Opinion at 4-5 (quoting <u>Jacobson v. Healthcare Fin. Servs., Inc.</u>, 516 F.3d 85, 90 (2d Cir. 2008)). (A24-25)

[I]n crafting a norm that protects the naïve and the credulous the courts have carefully preserved the concept of reasonableness. Accordingly, the FDCPA does not aid plaintiffs whose claims are based on bizarre or idiosyncratic interpretations of collection notices. The standard presumes the consumer at least possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care.[27]

Applying this standard, she concluded that "the Letter would not mislead the least sophisticated consumer".[28] The FDCPA imposes no affirmative obligation on a debt collector to "inform a debtor of the potential tax implications of a settlement offer", as Mr. Altman acknowledges.[29] But although here J.C. Christensen made specific statements about the "savings" that Mr. Altman would enjoy, this made no difference, Judge Ross ruled, a "distinction without a difference". This was, she continued, because the figure was simply "doing the math" and "is not a representation one way or the other about tax implications. Under these circumstances, such a statement cannot be false, deceptive, or misleading under the applicable standard in this circuit."[30]

---

[27] 2014 U.S. Dist. LEXIS 79621, at *7-8, Opinion at 5 (quotation marks and citations omitted). (A25)

[28] Ibid, at *8, Opinion at 5. (A25)

[29] Ibid, at *8, Opinion at 5. (A25)

[30] Ibid, at *12-13, Opinion at 7-8. (A27-28)

## Summary of Argument

By sending a debt-collection letter that promoted specific savings that would be enjoyed by Mr. Altman were he to accept one of the proffered offers but failing to tell him that those savings may not be as large as J.C. Christensen said they would be (because of possible taxation), J.C. Christensen sent a misleading letter. This is because it provided incomplete, and thus misleading, information for the consumer to use in deciding whether to accept one of those offers. Because J.C. Christensen decided to specify the "savings" – which it did not have to do – it had to provide a complete statement about the offers. It did not do so.

The issue on this appeal is one addressed by only a handful of district courts[31] and it appears by no court of appeals.

## Standard of Review

The Court reviews grants of motions for judgment on the pleadings de novo.[32]

---

[31] In addition to this case, Mr. Altman has identified the following as having considered the issue: Ellis v. Cohen & Slamowitz LLP, 701 F. Supp. 2d 215, 223 (N.D.N.Y. 2010); Landes v. Cavalry Portfolio Services, LLC, 774 F. Supp. 2d 800 (E.D. Va. 2011); and Schaefer v. ARM Receivable Management, 2011 U.S. Dist. LEXIS 77828, at *14-15 (D. Mass. July 19, 2011). Plaintiff knows of one unreported decision from the Bankruptcy Court in the Northern District of New York as well, which found no claim stated. Brierly v. Riddle & Wood, P.C., No. 10-90164 (Bankr. N.D.N.Y. Apr. 6, 2011) (unreported transcript of hearing).

[32] Greco v. Trauner, Cohen & Thomas, 412 F.3d at 363.

10

## Argument

### I. The Test Applied to Whether a Defendant Is
### Entitled to Judgment on the Pleadings

A defendant's 12(c) motion for judgment on the pleadings is tested in the same way as one for failure to state a claim for which relief can be granted. "Thus, accepting the allegations contained in the complaint as true and drawing all reasonable inferences in favor of the plaintiff, a complaint should not be dismissed under Rule 12(c) unless it 'appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"[33]

### II. Should He Prove His Claims, Plaintiff Will
### Be Entitled to Relief Under the FDCPA

This Action is brought under section 1692e(10) of the FDCPA, which prohibits "The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer".[34]

In Easterling v. Collecto, Inc., this Court said:

> The FDCPA "establishes certain rights for consumers whose debts are placed in the hands of professional debt collectors for collection." DeSantis v. Computer Credit, Inc., 269 F.3d 159, 161 (2d Cir. 2001). In particular, section 1692e of the FDCPA provides that

---

[33] Greco v. Trauner, Cohen & Thomas, 412 F.3d at 363 (quoting Ad-Hoc Comm. of Baruch Black and Hispanic Alumni Ass'n v. Bernard M. Baruch College, 835 F.2d 980, 982 (2d Cir. 1987) (internal quotation marks omitted in orig.)).

[34] 15 U.S.C. § 1692e(10) quoted supra at 8 and infra at SA-1.

"[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Whether a collection letter is "false, deceptive, or misleading" under the FDCPA is determined from the perspective of the objective "least sophisticated consumer." <u>Clomon v. Jackson</u>, 988 F.2d 1314, 1318 (2d Cir. 1993) (internal quotation marks omitted). Under this standard, "collection notices can be deceptive if they are open to more than one reasonable interpretation, at least one of which is inaccurate." <u>Id</u>. at 1319. However, "in crafting a norm that protects the naïve and the credulous the courts have carefully preserved the concept of reasonableness." <u>Id</u>. Accordingly, FDCPA protection "does not extend to every bizarre or idiosyncratic interpretation of a collection notice" and courts should apply the standard "in a manner that protects debt collectors against liability for unreasonable misinterpretations of collection notices." <u>Id</u>. (internal quotation marks and citation omitted). Debt collectors that violate the FDCPA are strictly liable, meaning that "a consumer need not show intentional conduct by the debt collector to be entitled to damages." <u>Russell v. Equifax A.R.S.</u>, 74 F.3d 30, 33 (2d Cir. 1996).[35]

## 1.  The Letter Violated the FDCPA

The question is whether the Letter would deceive the least-sophisticated consumer. In it, J.C. Christensen elected to say to Mr. Altman that his "savings" would be "48%" if Offer 1 were accepted and "$2,123.85" if he instead went for Offer 2. It opted to represent these as specific "savings". Yet because of the potential tax-consequences of a debt-reduction, the actual savings could be less than that "48%" if Offer 1 were accepted and less than "$2,123.85" under Offer 2.

---

[35] 692 F.3d 229, 233-34 (2d Cir. 2012) (per curiam). This is the standard Judge Ross applied. 2014 U.S. Dist. LEXIS 79621, at *7-8, Opinion at 5-6. (A25-26)

Notably, J.C. Christensen did not have to specify the savings that would be realized in the offers. When it chose to do so, it undertook the obligation to provide the caveat along the lines of "your actual savings may be lower due to applicable tax rules" or "you may wish to contact your tax advisors with respect to these offers".

J.C. Christensen would not be arguing that were Mr. Altman's debt-reduction actually $2,000 under Offer 2 and not what it represented it to be in the Letter there was no violation of the FDCPA. This is the functional equivalent of what happened here and given the least-sophisticated consumer test it is a violation.

## 2. Mr. Altman is Not Claiming that J.C. Christensen had to Advise of "Potential Tax Implications"

Judge Ross said that under the circumstances of a debt-collection letter that particularized potential savings, the debt collector had not "assumed the obligation to inform [the consumer] that a settlement might result in tax consequences (or, at least, to recommend that he consult a tax advisor)". This "goes too far in stretching the limits of reasonable interpretation under the FDCPA".[36] She agreed with Schaefer v. ARM Receivable Mgmt., Inc. that "requiring, as a matter of law, debt collectors to inform a debtor of such a potential collateral consequence of settling a

---

[36] 2014 U.S. Dist. LEXIS 79621, at *8-9, Opinion at 5-6. (A25-26)

13

pre-existing debt seems far afield from even the broad mandate of FDCPA to pro-
tect debtors from abusive debt collection practices".[37]

But neither she nor <u>Schaefer</u> explain why this is so. Both point to the
absence in the Act of an express requirement that informing of possible tax-conse-
quences must be included in a collection letter of this sort. Neither explains,
though, why the absence of the statement in a letter does not render it misleading
and thus a violation of the catch-all provision that the Act does contain. As the
Complaint alleges:

> 22. In its sending of the Letter and failing to include therein,
> after it claimed that the offers being extended to Plaintiff and the other
> members of the Class would, if accepted, constitute specific "savings"
> from what was his account balance, a statement to the effect that the
> "savings" might not be as large as were being represented because
> Plaintiff and the other members of the Class may be obligated to
> report the "savings" as income on their federal and state tax returns,
> and pay taxes thereon, Defendant has used a "false, deceptive, or
> misleading representation or means in connection with the collection
> of any debt" as defined in 15 U.S.C. § 1692e, including the "use of
> any false representation or deceptive means to collect or attempt to
> collect any debt or to obtain information concerning a consumer", as
> prohibited by 15 U.S.C. § 1692e(10).[38]

In choosing to say that savings would be X ("48%" or "$2,123.85" depend-
ing on whether Offer 1 or 2 were accepted) J.C. Christensen undertook the duty to

---

[37] 2011 U.S. Dist. LEXIS 77828, at *15 (D. Mass. July 19, 2011), <u>quoted at</u>
2014 U.S. Dist. LEXIS 79621, at *9, Opinion at 6 (A26)

[38] Cplt. ¶ 22. (A10)

14

be accurate in that representation. It wasn't. In choosing to go beyond saying the creditor agreed to settle its claim for a payment of $3,155.43 immediately or $3,944.28 by making three $1,314.76 payments,[39] J.C. Christensen became obligated to make reference to taxes because such reference was necessary to make what was said not misleading. J.C. Christensen had its reasons for adding the specifics. Whatever those reasons were, they created the obligation to be accurate and informative.

In Ellis v. Cohen & Slamowitz LLP, Judge Sharpe of the Northern District of New York wrote that, "the taxes levied specific to that additional taxable income would in essence diminish the actual net value of the discount offered by the debt collector. Thus, the discount offered in C&S's second letter may constitute a deceptive or misleading collection practice by failing to warn the consumer that the amount forgiven could affect his tax status."[40] What was important in Ellis, and dispositive here, is that the possibility of taxation on the debt-reduction was relevant to the specific figures in the Letter and that the use of those figures without qualification rendered them, and the Letter, misleading.

---

[39] See Letter. (A13)

[40] 701 F. Supp. 2d 215, 223 (N.D.N.Y. 2010).

15

Judge Ross declined to follow <u>Ellis</u>.[41] Instead she agreed with <u>Landes v. Cavalry Portfolio Services, LLC</u>, which concluded that "[n]owhere did [the debt collector] Cavalry promise that the discharge of indebtedness would or would not have potential tax consequences, and under the circumstances, no reasonable debtor could construe the language to suggest otherwise".[42] But the issue is not whether "tax consequences" had to be revealed – Mr. Altman does not claim that they did – but that <u>the promoted "savings" without more rendered the Letter misleading</u>.

In fact, <u>Landes</u> largely declined to address whether allegations of the sort made by Mr. Altman would violate the FDCPA, including by observing that "plaintiff's Complaint does not pursue that theory of recovery".[43] <u>Landes</u> kept returning to the question of whether the defendant there was obligated to make a specific reference to "tax consequences" in its letter and never squarely addressed the issue here, which is whether J.C. Christensen's Letter is misleading because the <u>specified savings</u> could well be less than J.C. Christensen claimed they were. It happens that this is because of the potential tax implications but that is just fortuitous.

---

[41] 2014 U.S. Dist. LEXIS 79621, at *13-14 n.3, Opinion at 8 n.3 (A28)

[42] 774 F. Supp. 2d 800, 804 (E.D. Va. 2011).

[43] 774 F. Supp. 2d at 804-05.

As for a second case that Judge Ross cited, <u>Schaefer v. ARM Receivable Management</u>, which largely relied on <u>Landes</u>,[44] did not assess, let alone decide, whether the least-sophisticated consumer would have been misled by the omission. These cases merely said there was no duty to say anything without explaining why. Nor does Judge Ross.

The issue for the Court here, however, is whether a letter that said what the Letter said but failed to add the suggested additional language (or something of the sort) made it misleading. In fact, the recipient would be taken aback to later learn that the 48% or $2,123.85 "savings" she thought she was getting were far smaller. This exposes the Letter's defect. "[N]othing whatsoever in the Letter", Judge Ross wrote, "can be reasonably construed as a representation by J.C. Christensen as to the collateral consequences – tax-related or otherwise – of settling the debt at a reduction".[45] To the contrary, the Letter can only be construed as a statement of what Mr. Altman would "save" by accepting one of the two offers.

---

[44] 2011 U.S. Dist. LEXIS 77828, at *14-15 (D. Mass. July 19, 2011).

[45] 2014 U.S. Dist. LEXIS 79621, at *11, Opinion at 7 (A27)

Finally, Mr. Altman's argument does not turn on whether the Letter used the word "tax" in some way, shape, or form.[46] The line J.C. Christensen crossed was not that it mentioned "taxes" without more but that it mentioned "savings" without disclosing that the represented "savings" might well be materially less than what they were represented to be.

Judge Ross said that J.C. Christensen's "'doing the math'" did not matter since it "cannot reasonably be construed" as addressing what Mr. Altman would "'net'" should he accept one of the two offers.[47] This would be true had J.C. Christensen stopped and said only what Mr. Altman would end up paying under the two offers. By "doing the math", J.C. Christensen had to be completely candid and at a minimum disclose that when to properly assess the offers, tax considerations should be included. It did not.

### Conclusion

This Appeal presents to this Court the opportunity to resolve an open issue under the FDCPA. Does a decision by a debt collector to make specific statements, in numbers or percentages, about the benefits of settlements that are offered in the

---

[46] Compare 2014 U.S. Dist. LEXIS 79621, at *11, Opinion at 7 (noting that in Landes the letter "at least mentioned 'tax season savings,' 774 F. Supp. 2d at 801"). (A27)

[47] 2014 U.S. Dist. LEXIS 79621, at *12, Opinion at 7 (A27)

letter require that the debt collector also advise the consumer that her actual "savings" may be less than they appear at face value, because of taxes?

Here, the Letter J.C. Christensen sent to Mr. Altman would be misleading to the least-sophisticated consumer and thus violated the FDCPA. The District Court erred in granting Defendant judgment on the pleadings.

Dated:  Brooklyn, New York
        August 21, 2014

                              KORSINSKY & KLEIN, LLP


                              By:  */s/ Michael Korsinsky*
                                   Michael Korsinsky
                              2926 Avenue L
                              Brooklyn, New York  11210
                              212-495-8133
                              *Attorneys for Plaintiff/Appellant*


Of Counsel:

        Michael Korsinsky
        Joseph P. Garland

19

**Federal Rules of Appellate Procedure Form 6.  Certificate of Compliance With Rule 32(a)**

Certificate of Compliance With Type-Volume Limitation,
Typeface Requirements and Type Style Requirements

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

☐    this brief contains                      words, excluding the
parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

☐    this brief uses a monospaced typeface and contains
lines of text , excl uding the pa rts of the bri ef
exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of  Fed. R. App. P. 32(a)(5) and the
type style requirements of Fed. R. App. P. 32(a)(6) because:

☐    this brief has been prepared in a proportionally spaced typeface
using [                                ] in
[                                ], *or*

☐    this brief has been prepared in a monospaced typeface using "
[                                ] with
[                                ].

(s)    _____

Attorney for _____

Dated: _____

# STATUTORY ADDENDUM

## FDCPA § 807 (15 U.S.C. § 1692e).
## False or misleading representations

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

*       *       *

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.